## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**Darrell Huddleston**                                                                      **Plaintiff**

**v.**                              **CASE NO. 3:14CV00032 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                         **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Darrell Huddleston seeks judicial review of the denial of his application for disability

insurance benefits (DIB) and supplemental security income (SSI). Huddleston applied for DIB

and SSI in October 2011, with an alleged onset date of September 10, 2009.[1] Huddleston last

worked in September 2009 as a stain machine operator.[2] Huddleston's date last insured is

December 31, 2014.[3] Huddleston bases disability on heart problems and coronary artery disease.[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Huddleston

did not engage in substantial gainful activity during the period from the amended alleged onset

date to the date last insured.[5] Huddleston has severe impairments - ischemic heart disease,

coronary artery disease and hypertension.[6] None of Huddleston's severe impairments meet the

Listings, and Huddleston can perform medium work.[7] The ALJ held that Huddleston can perform

---

[1]SSA record at p. 105 & 111.

[2]*Id.* at p. 154.

[3]*Id.* at p. 160.

[4]*Id.* at p. 153.

[5]*Id.* at p. 11.

[6]*Id.*

[7]*Id.* at pp. 11-12.

past relevant work as a stain machine operator.[8] Huddleston's application was denied.[9]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[10] Huddleston filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]

**Huddleston's allegations.** Huddleston maintains that the ALJ's denial of disability benefits should be reversed because (1) the ALJ failed to establish whether Huddleston meets the "worn-out worker" exception; (2) the ALJ erred in the credibility determination; (3) the RFC is not supported by substantial evidence; and (4) the ALJ failed to include specific limitations in the hypothetical presented to the VE. The ALJ's decision is supported by substantial evidence and no legal error occurred.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[12] For substantial evidence to exist in this case,

---

[8]*Id.* at p. 16.

[9]*Id.*

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[12]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

a reasonable mind must accept the evidence as adequate to support the determination that

Huddleston is not disabled.[13]

**Worn-out worker exception**. Huddleston maintains that he meets the "worn-out

worker" exception and therefore is entitled to disability. The argument is not persuasive because

Huddleston does not meet the requirements of that exception.

The Social Security Regulations state that

> If you have no more than a marginal education and work experience of 35 years
> or more during which you did only arduous unskilled physical labor, and you are
> not working and are no longer able to do this kind of work because of a severe
> impairment(s), we will consider you unable to do lighter work, and therefore,
> disabled.[14]

"Marginal education" is the "ability in reasoning, arithmetic, and language skills which are

needed to do simple, unskilled types of jobs."[15] The Regulations "generally consider that formal

schooling at a 6th grade level or less is a marginal education."[16] Huddleston testified that,

although he did not graduate from high school or receive a GED, he completed twelve years of

schooling.[17] Therefore, he is not marginally educated, and is not entitled to the benefits of the

exception.

**Credibility.** Huddleston further asserts that the ALJ erred in the credibility determination

---

[13]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[14]20 C.F.R. § 404.1562(a); 20 C.F.R. § 416.962(a).

[15]20 C.F.R. § 404.1564(b)(2); 20 C.F.R. § 416.964(b)(2).

[16]*Id.*

[17]SSA record at p. 26.

because the *Polaski*[18] factors were not properly applied and the credibility determination is not supported by substantial evidence.

An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[19] To evaluate Huddleston's credibility, the ALJ followed the required two-step process and considered the required factors under *Polaski*,[20] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Huddleston's subjective complaints of pain and limitations were not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

Huddleston is capable of performing wide-ranging daily activities. In the Function Report, Huddleston noted that he is able to take care of his personal needs and take his medications without a reminder.[21] Huddleston lives alone, prepares his own meals, cleans the house, does laundry, washes dishes, makes his bed, shops for groceries and mows the lawn.[22] He does not need help or encouragement to do these things.[23] Huddleston is able to go out alone, and can drive a car.[24]

---

[18]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[19]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[20]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[21]SSA record at pp. 145-146.

[22]*Id.* at pp. 25 & 146.

[23]*Id.* at p. 146.

[24]*Id.* at p. 147.

The objective medical evidence also supports the ALJ's credibility determination. Huddleston has been diagnosed with hypertension, hyperlipidemia and carotid stenosis,[25] and in April 2009, he was hospitalized with chest pain.[26] The observations from his treating physicians, however, indicate that his heart impairments are not disabling. Following his 2009 hospital stay, the progress notes indicate that Huddleston had no further episodes of chest pain.[27] In a May 1, 2009, progress note, Huddleston's treating physician wrote that Huddleston was not experiencing dizziness, edema, syncope or palpitations.[28] Later that month, it was noted that Huddleston was "doing very well" and reported no pain.[29] Further, Huddleston was tolerating his medications well and denied any elevated blood pressure or headaches.[30] In April 2012, Huddleston reported to his treating physician that he experienced an episode of right side weakness, facial drooping and tingling in his right foot.[31] The physician determined that Huddleston suffered a stroke.[32] Following that incident, however, Huddleston suffered no further symptoms associated with a stroke. A subsequent progress note indicated that Huddleston

---

[25]*Id.* at pp. 192 & 243.

[26]*Id.* at p. 200.

[27]*Id.* at pp. 189, 238, 300 & 312.

[28]*Id.* at p. 189.

[29]*Id.* at p. 238.

[30]*Id.*

[31]*Id.* at p. 302.

[32]*Id.* at p. 304.

showed no acute distress and was pleasant.[33] In the last available progress note, Huddleston's

treating physician observed that Huddleston was doing well and taking all of his medications as

directed.[34] Huddleston had no new complaints.[35]

Although Huddleston underwent diagnostic testing for his heart conditions, the tests did

not reveal anything serious. A 2009 progress note references an ultrasound that showed "right

carotid arteries had less than 50%, right internal carotid had 69%, left internal carotid artery had

less than 50% as well."[36] Huddleston's treating physician recommended a stress test, and one

was performed.[37] The test indicated mild apical ischemia and normal left ventricle systolic

function.[38] Such findings do not support allegations of disabling pain and symptoms.

The record reveals that Huddleston has failed to comply with recommended treatment on

multiple occasions. This lends further support to the ALJ's credibility determination.[39]

Huddleston smokes one to two packs of cigarettes a day,[40] and has been advised on multiple

---

[33]*Id.* at p. 300.

[34]*Id.* at p. 312.

[35]*Id.*

[36]*Id.* at p. 189.

[37]*Id.* at p. 194.

[38]*Id.* at p. 195.

[39]*See Gulliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

[40]SSA record at p. 192.

occasions to quit smoking.[41] Huddleston stated that he is not interested in quitting smoking.[42] Following the stroke, Huddleston's treating physician recommended an MRI, referral to a specialist and that Huddleston begin taking Plavix.[43] Huddleston refused all three.[44] There are also a number of notations in the progress notes indicating that Huddleston was not taking his medication.[45]

Additionally, Huddleston stated during the hearing that he thinks he could perform a job requiring him to stand and/or walk six hours a day, 5 days a week.[46] This is inconsistent with his allegations of disabling symptoms, and weighs against his credibility.

A reasonable mind would accept this evidence as adequate to support the ALJ's credibility determination. The credibility determination is supported by substantial evidence.

**RFC.** Huddleston argues that the RFC is not supported by substantial evidence. Specifically, Huddleston maintains that the RFC does not take into account the severity of his stroke and non-exertional limitations. As previously discussed, Huddleston's activities of daily living and medical records support the ALJ's credibility determination, and therefore provide support for the RFC. The opinions of state physicians also support the RFC determination. The RFC determination is supported by substantial evidence.

---

[41]*Id.* at pp. 190, 193, 299, 302, 305, 308 & 312.

[42]*Id.* at pp. 192, 299, 302, 305, 308 & 312.

[43]*Id.* at p. 304.

[44]*Id.*

[45]*Id.* at pp. 299 & 302.

[46]*Id.* at p. 32.

In November 2011, a state physician completed a Physical Residual Functional Capacity Assessment.[47] The physician did not assess any non-exertional limitations.[48] He concluded that Huddleston was capable of medium work.[49] This assessment was affirmed by a second state physician.[50] Although the assessment was completed prior to Huddleston's stroke, medical records from the time period following the stroke support the assessment.[51] The two progress notes following the stroke indicate that Huddleston was in no acute distress and was pleasant.[52] The notes do not discuss any further complications or symptoms associated with the stroke.

A reasonable mind would accept this evidence as adequate to support the ALJ's RFC. The RFC is supported by substantial evidence.

**Hypothetical.** Huddleston maintains that the ALJ's denial of his disability benefits is not supported by substantial evidence because the ALJ failed to include multiple alleged limitations - chronic pain, numbness and tingling of the extremities, dizziness, weakness in the right leg and arm - in the hypothetical presented to the VE. This argument is unpersuasive. The ALJ implicitly rejected these alleged limitations by excluding them from the hypothetical. Therefore, Huddleston's argument turns on credibility, and, as established above, the ALJ's credibility determination is supported by substantial evidence.

---

[47]*Id.* at p. 279.

[48]*Id.* at pp. 281-283.

[49]*Id.* at p. 286.

[50]*Id.* at p. 296.

[51]*Id.* at pp. 299 & 312.

[52]*Id.* at pp. 300 & 313.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Huddleston's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 19th day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE